IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CR-00039-M

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCUS TERRELL BURNEY,

    Defendant.

ORDER

This matter comes before the court on Defendant Marcus Terrell Burney's ("Burney" or "Defendant") motion to dismiss [DE 23]. Burney argues that dismissal of the indictment is proper due to the United States' alleged violation of his Sixth Amendment right to a speedy trial. The United States responds that Burney fails to demonstrate both a presumptively unreasonable delay and the prejudice necessary to support dismissal of the indictment. For the reasons that follow, the court denies the Defendant's motion.

## BACKGROUND

The following is a statement of facts presented by the Defendant for purposes of his motion. On March 8, 2023, Burney was stopped by law enforcement in Sampson County for driving with a "tinted" license plate. When he was stopped, the officer approached asked Burney to step out of the car, conducted a pat down, and asked Burney to sit in the patrol car while the officer completed a citation. At some point, the officer called for a "K9" officer to arrive and conduct a passive air sniff around the vehicle. Before the canine arrived, the officer said, "I am only giving you a warning for the tinted license." Burney was in the patrol car during the time the canine performed

its passive air search. The canine alerted, and the officers conducted a search of the inside of the vehicle. The officers found a firearm in the center console, as well as scales, drug residue, and a half empty bottle of tequila in the vehicle.

According to case dockets in this court ("EDNC") and in the Western District of North Carolina ("WDNC"), Burney was on supervised release pursuant to a conviction and judgment in Case No. 7:12-CR-00068-M (EDNC) when he was stopped and searched. Although the original judgment was issued in the EDNC, Burney's supervised release, which commenced in April 2019, was transferred to the WDNC in 2020 (*see* Case No. 3:23-CR-00302-MOC); thus, based on Burney's possession of a firearm as a felon, probation sought to revoke Burney's release by filing a petition in the WDNC (*see id.*, DE 2). Burney was arrested on the petition on March 17, 2023, and attended an initial appearance in the EDNC on March 20, 2023, at which he was appointed counsel. Case No. 7:23-MJ-01069-RJ, DE 3, 4, 6. Defendant requested that, if the court found probable cause at the preliminary hearing, his detention hearing be held in the WDNC. *See id.*, DE 2. At the preliminary hearing on March 23, 2023, Burney waived his right to a probable cause hearing, and the court found probable cause as to Violations 1, 2, and 3 set forth in the petition for revocation. *Id.*, DE 7, 8. The court also granted Burney's request and committed him to the WDNC for further proceedings. *Id.*, DE 9.

Burney was transported to the WDNC and attended an initial appearance on April 21, 2023, at which time counsel was appointed to represent him (Case No. 3:23-CR-00302-MOC, DE 7). Burney, then represented by counsel, attended a detention hearing on April 26, 2023, at which the court granted the United States' motion for detention. *Id.*, DE 9. Burney was remanded to the custody of the United States Marshal.

Meanwhile, on April 25, 2023, the United States filed an Indictment in the EDNC based on the March 8, 2023 traffic stop. Case No. 7:23-CR-00039-M, DE 1. On June 1, 2023, the court set the case for an initial appearance on July 5, 2023. However, Burney was not transported from the WDNC at the time, so the hearing was rescheduled to August 16, 2023. On July 11, 2023, the court issued an order granting an application for writ of *habeas corpus ad prosequendum* (or, "HCAP") and appointed the public defender to represent Burney. *Id.*, DE 7, 8.

On August 16, 2023, counsel for Burney and for the United States appeared, but Burney had not been transported to the EDNC; the Assistant U.S. Attorney explained that the government "requested the defendant have an initial appearance in the Western District." *Id.*, DE 9. In the WDNC, Burney appeared for an initial appearance on August 18, 2023, at which he was appointed counsel and advised of the indictment's charges. Case No. 3:23-MJ-00279. He was then transported to the EDNC. Burney's initial appearance in the EDNC was rescheduled to August 30, 2023, at which Burney attended in person with his counsel and was advised of the charges and maximum penalties. Case No. 7:23-CR-00039-M, DE 16.

## ANALYSIS

Rule 48(b) of the Criminal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. To establish a violation of this right, a defendant must show first that "the Amendment's protections have been activated by an 'arrest, indictment, or other official accusation.'" *United States v. Burgess*, 684 F.3d 445, 451 (4th Cir. 2012) (quoting *United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005). The determination of whether a defendant has been denied a speedy trial

in violation of the Sixth Amendment is made on a case-by-case basis and requires a balancing of the following factors: (1) the length of delay; (2) the reasons for the delay; (3) the timeliness and vigor of the defendant's assertion of the speedy trial right; and (4) the degree of prejudice which the defendant suffers. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The first *Barker* factor, length of delay, is "'a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial' to trigger the balancing inquiry." *United States v. Villa*, 70 F.4th 704, 713 (4th Cir. 2023) (quoting *Burgess*, 684 F.3d at 451; *see also Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). While the determination of whether a delay is "presumptively prejudicial"[1] depends on the particular circumstances of the case (*Barker*, 407 U.S. at 530-31), the Supreme Court has noted lower courts' findings that a post-accusation delay approaching one year may be considered presumptively unreasonable. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). The Fourth Circuit has concluded that a post-accusation delay as short as eight months may qualify as presumptively unreasonable "in cases of limited complexity." *Burgess*, 684 F.3d at 452 (citing *Woolfolk*, 399 F.3d at 598).

No party disputes that this case, involving one count of felon in possession of a firearm, is a case "of limited complexity." Burney claims he has suffered a six-month delay between March and September of this year.[2] As set forth above, Burney was arrested and detained on March 17,

---

[1] The *Doggett* Court emphasizes that, "as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which **courts deem the delay unreasonable enough to trigger the *Barker* enquiry**." 505 U.S. at 652 (emphasis added).

[2] Burney notes that "[t]he period of delay between the alleged offenses and when the Government obtained the indictment is not addressed here, as it warrants a separate Fifth Amendment Due Process Analysis." DE 23 at 2; *see also Villa*, 70 F.4th at 715-16 (noting the legal standards for evaluating a claim that an alleged pre-indictment delay violated the Fifth Amendment.) He makes

4

2023, pursuant to the petition for revocation of supervised release filed by the U.S. Probation Office in the WDNC, where Burney was supervised at the time. However, in the present motion, Burney seeks dismissal of the *indictment*, which was not filed until April 25, 2023. Burney has remained in custody since his initial arrest.

The Fourth Circuit does not appear to have addressed this precise situation in determining when the speedy-trial clock begins to run; however, when analyzing "whether the speedy-trial clock begins anew if, after an initial arrest and indictment, the government later obtains a new indictment and dismisses the first, but the defendant remains in custody throughout," the court has found that the "right to a speedy trial on the crime charged in the second indictment attached when the prosecution obtained that indictment" because "[i]t ***did not relate back*** to [the defendant's] initial arrest for different crimes." *See Villa*, 70 F.4th at 714 (emphasis added). Thus, if the charges on the initial arrest and the subsequent indictment are "related," courts have found that the clock begins to run from the initial arrest. *Id.* at 714-15 (collecting cases and noting that "when charges in a later indictment merely build off the first indictment or the conduct underlying it, courts tend to calculate the length of pretrial delay from the arrest or first indictment."). Such approach is meant to "guard against [a] concern—namely, that the government will use new or superseding indictments, with new or modified charges arising from the same conduct as the initial arrest and indictment, to avoid the strictures of the Speedy Trial Clause." *Id.*

The Fourth Circuit neither approved nor rejected this approach but, rather, found that it did not apply to the facts presented in *Villa*. *Id.* at 715. In the case presented here, even if the court were to agree with the other circuit decisions listed in *Villa* and adopt Burney's requested delay

---

no other argument in this respect and, thus, the court does not address any due process argument here.

5

period of March 17, 2023 to "September 2023"[3] a period of approximately "six months," the court finds the delay is not presumptively unreasonable, even for a relatively straightforward case. *See Doggett*, 505 U.S. at 652 n.1; *Burgess*, 684 F.3d 452.

Although it need not do so, the court finds that the remaining factors also do not weigh in favor of dismissal. The United States explains that confusion in arranging the transportation of Burney from the WDNC to the EDNC caused at least some of the delay, in that the U.S. Marshal rejected the July 11, 2023 order for HCAP and required that a different form be completed and properly executed before Burney could be transported. *See* DE 26 at 6. Burney argues simply that there was no reason for the delay. DE 23 at 6. The court weighs this second factor somewhat against the United States.[4]

Regarding the third factor, Burney argues that he affirmatively asserted his right to a speedy trial "at his initial appearance and at his probable cause hearing." DE 23 at 7. The United States counters that Burney's first assertion of his right was with the present motion. Burney has attended four initial appearances in this matter but does not specify at which of these hearings he asserted his right, and he points to nothing in the record demonstrating he asserted the right before filing the present motion. However, the record reflects that, at his detention hearing on September 13,

---

[3] Burney does not identify a specific date on which the period ends; a scheduling order was issued on September 1, 2023, setting the arraignment for October 24, 2023, but that hearing has been continued at Defendant's request based on his filings of this motion and a motion to suppress. *See* Case No. 7:12-CR-00068-M, DE 163, ¶ 4.

[4] The court acknowledges the unusual nature of this case, in that Burney's original conviction and judgment occurred in the EDNC; his post-release supervision was transferred to the WDNC; while under supervision, he was stopped by law enforcement, arrested, and initially detained in the EDNC; Burney requested that proceedings after his initial and preliminary hearings on the petition for revocation be heard in the WDNC so was transferred there; then he needed to be transferred back to the EDNC for proceedings on the indictment. The challenged delay occurred following the detention hearing in the WDNC and the filing of the indictment in the EDNC. With this order, the court directs each agency involved in this process to review its practices and procedures to ensure that any such delay(s) are avoided in the future.

2023, Burney affirmatively asserted his right to a speedy trial. *See* DE 19. Twelve days later, Burney filed the present motion. Given that Burney's assertion came after, or at the end of, the delay period, the court weighs this factor slightly in favor of the Defendant.

Finally, in weighing the fourth factor, the court must consider "(1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (citing *Barker*, 407 U.S. at 532). Here, Burney does not describe an "oppressive" detention, other than its length, and does not describe how his defense has been impaired by the delay. Rather, Burney contends that he has suffered anxiety and concern because he was "denied" counsel and "the ability to defend himself successfully." The court is not convinced. Burney has been appointed counsel at each stage of this process: at his initial appearance in the EDNC on March 20, 2023, just after he was arrested (No. 7:23-MJ-01609-RJ, DE 4); after his request to transfer to the WDNC and at his initial appearance on April 21, 2023 (No. 3:20-CR-00302-MOC); at his initial appearance on the indictment in the WDNC on August 18, 2023 (No. 3:23-MJ-00279-DCK); and at his initial appearance on the indictment in the EDNC on August 30, 2023 (No. 7:23-CR-00039). He has been represented in each preliminary hearing and detention hearing held in his cases. While the court has no doubt that Burney (and likely every other criminal defendant) has suffered anxiety and concern since his arrest and detention, he does not persuade the court that such distress arises specifically from a delay in proceeding to trial, and he fails to identify or describe any circumstance in which he has been oppressed or his defense has been impaired by the delay in these proceedings. *See Hall*, 551 F.3d at 272 (regarding the defendants' stated "anxiety and concern," the court found "the Defendants are unable to identify 'any restraint on liberty, disruption of employment, strain on financial resources, [or] exposure to public obloquy' that was

greater than that faced by 'anyone openly subject to criminal investigation.'") (quoting *United States v. MacDonald*, 456 U.S. 1, 9 (1982)). The court finds this factor weighs heavily against dismissal.

The court concludes that the factors necessary to determine whether the United States violated Burney's Sixth Amendment right to a speedy trial weigh against finding a violation of that right.

## CONCLUSION

While true that this case has not been "ideal" in proceeding quickly and smoothly, and while the court finds that some of the delay has not been adequately explained, Burney fails to convince the court that the United States violated his Sixth Amendment right and that any delay in his progression to trial supports dismissal of the indictment. Accordingly, Burney's Motion to Dismiss [DE 23] is DENIED.

SO ORDERED this 24th day of October, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE