IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CR-00039-M

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>MARCUS TERRELL BURNEY,<br><br>　　Defendant. | ORDER |

　　This matter comes before the court on Defendant Marcus Terrell Burney's ("Burney") second Motion to Suppress [DE 63]. Burney seeks suppression of all evidence seized during a warrantless search of his vehicle following a traffic stop on March 8, 2023, arguing that the canine officer ("Rocky") was not sufficiently reliable in his ability to detect narcotics so as to justify the warrantless search of Burney's vehicle based on Rocky's passive alert. The United States responds that Rocky was properly trained and certified and, thus, sufficiently reliable for probable cause. The court heard the matter on February 3, 2025, and invited supplemental briefing. Now, fully advised, the court finds that suppression is not warranted and denies Burney's motion.

I.　**Case Background**

　　The court incorporates here by reference its statement of this case's procedural background and findings of relevant facts set forth in its November 7, 2023 order denying Burney's first motion to suppress. *See* DE 32. In the present motion, Burney contends that although Rocky received certifications in Narcotics Detection from the International Police Working Dog Association ("IPWDA"), "there is very little to demonstrate the standards by which [the deputy and dog] were

judged." Moreover, defense counsel asserts that he reviewed approximately 170 incident reports from January 2021 to the March 8, 2023 arrest date, and found that at least half of Rocky's alerts resulted in the lack of any contraband or the existence of items Rocky was not trained to detect.

At the hearing, however, defense counsel informed the court that Burney does not challenge the sufficiency of Rocky's training and certifications. Rather, he challenges the reliability of using a multi-purpose dog, like Rocky, to conduct an open-air sniff. Testimony from an IPWDA "master trainer," Lt. Joseph Salisbury, and Rocky's handler, Deputy Joshua Akers, revealed that Rocky was trained for and certified in the following purposes: narcotics detection, trailing, and article (or "evidence") searches. An evidence search occurs when an article is located based on a human's odor on the article. Burney questions how Rocky's positive alert can be deemed reliable under the circumstances of this case, where Rocky was trained to detect certain narcotics, none of which were reportedly found in Burney's vehicle,[1] and was also trained to detect articles having a human odor on them.

In his supplemental brief, Burney asserts that he requested from government counsel any standards promulgated by IPWDA regarding training dual- or multi-purpose dogs, specifically with respect to mandating separate alerts for separate searches. Burney questions whether IPWDA is a "bona fide certifying agency," asking that the court consider the government's response, "[T]here are no standards related to this topic, the alert is whatever it is, and [Lt. Salisbury] is not familiar with a dog having separate alerts for separate searches." DE 75 at 4. Burney attaches to his brief an affidavit by Gary Shaw, a retired canine handler and certified instructor, who opines that "a narcotics detector dog having been trained, even if not certified, on a substance can be

---

[1] Rocky is trained to alert for cocaine, heroin, and methamphetamine. A digital scale with traces of a "white powder substance" was found in the vehicle.

2

relied upon not to indicate a previously rewarded substance, particularly in the absence of initial and ongoing extinction training of the initial substance the dog was trained to detect." DE 75-2. Burney also challenges whether IPWDA is "bona fide" given discrepancies between two of Rocky's test sheets, which were discussed at the hearing, as well as certain timing issues surrounding these tests and certifications, which are discussed below.

The United States counters in its supplemental brief that Deputy Akers uses different commands for different searches; thus, although the alert may be the same, Rocky understands that he is searching for narcotics based on one command and for articles based on another command. *See* DE 76. The government also repeats an argument made at the hearing: "[i]f K9 Rocky's alerts were simply based on the presence of human odor, he would fail certifications" and would "alert in every single instance roadside," which is not the case.

## II. Legal Standards

The defendant bears the burden of proving that his Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). "As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. Once the defendant establishes a basis for his suppression motion, the burden shifts to the government." *United States v. Adkinson*, 191 F. Supp. 3d 565, 568 (E.D. Va. 2016) (citations omitted). On an order resolving a motion to suppress, the Fourth Circuit will review a district court's factual findings for clear error and legal conclusions de novo. *United States v. Hill*, 849 F.3d 195, 200 (4th Cir. 2017).

When the court is determining preliminary questions concerning the admissibility of evidence, it is not bound by the Federal Rules of Evidence, except those with respect to privilege. *See* Fed. R. Evid. 104(a), 1101(d)(1); *see also United States v. Matlock*, 415 U.S. 164, 172-73

3

Case 7:23-cr-00039-M-KS    Document 78    Filed 02/26/25    Page 3 of 8

(1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence."); *United States v. McCalla*, 803 F.2d 1181, 1986 WL 17903, at *1 (4th Cir. Oct. 21, 1986) (concluding the defendant's assertion that the district court erred by admitting hearsay testimony at the suppression hearing lacked merit, in part, because "Federal Rule of Evidence Rule 104(a) provides that the court at a preliminary proceeding is not bound by the rules of evidence except for the rules governing privileges"). Accordingly, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980).

### III. Analysis

Probable cause requires only that "the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband . . . or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *United States v. Green*, 740 F.3d 275, 282 (4th Cir. 2014) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Probable cause to conduct a search based on a drug-detection dog's alert exists when the totality of the circumstances, "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 248 (2013)).

The Supreme Court held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert," and based on this evidence, "a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Harris*, 568 U.S. at 247. The Court specifically discounted data from uncontrolled field tests saying,

4

> Field data ... may markedly overstate a dog's real false positives. By contrast, those inaccuracies—in either direction—do not taint records of a dog's performance in standard training and certification settings. There, the designers of an assessment know where drugs are hidden and where they are not—and so where a dog should alert and where he should not.

*Green*, 740 F.3d at 282 (quoting *Harris*, 568 at 246). Accordingly, "in most cases," a drug-detection dog's field performance has "relatively limited import," and the better measure of a dog's reliability comes from his performance in controlled testing environments. *Id.*

In this case, the United States has met its burden to demonstrate that Rocky has been satisfactorily trained and certified to the proper standards for narcotics detection. *See* Govt. Ex. 1, DE 77. Burney does not dispute that Rocky has been trained and certified; rather, Burney contends that Rocky should be deemed unreliable because, as a dual- or multi-purpose canine officer, Rocky's alert at Burney's vehicle cannot be determined to have been for narcotics, since it might also have been simply for human odor.

At the hearing, the court found the testimony by Lt. Salisbury and Deputy Akers to be credible and reliable. Lt. Salisbury, a retired canine law enforcement officer and "master" canine trainer with the IPWDA, testified that dogs are trained for dual or multiple purposes, including narcotics detection, trailing, cadaver detection, and articles searches. He certified Rocky more than once for narcotics detection and articles searches and recalled "no issues" with his certifications. Lt. Salisbury did mention, however, a technical issue with two of Rocky's test sheets from January 2022; apparently, Salisbury was testing more than one dog on the same day and confused Rocky with another dog who was tested and certified to detect marijuana. Once Salisbury realized the error, he submitted a corrected test sheet on the IPWDA's server; Salisbury testified that he had no ability to rescind or "claw back" the erroneous sheet, so both sheets appear

5

on the website.[2] The court is satisfied with Salisbury's explanation of the discrepancy on the challenged January 25, 2022 test sheets and finds that it does not invalidate Rocky's training and certifications in the detection of cocaine, heroin, and methamphetamines, but not marijuana. The evidence reflects that Rocky was properly trained and certified in March 2023 when Burney's vehicle was stopped and searched.

Lt. Salisbury also testified that, although he did not train Rocky and does not know his training history,[3] a dog may be trained to know what type of search the handler commands. Deputy Akers testified that when directing Rocky to commence a search of a vehicle, he gives Rocky a specific command and presents the "seams" of the vehicle to the dog. During such search, Akers looks for a change in Rocky's behavior, such as a head snap or jump, then Rocky sits when he "alerts" to (or detects) the odor of narcotics. Akers stated that Rocky's alert is the same whether he searches for narcotics or human odor on articles, such as keys or clothing.

Burney relies on Akers' testimony to argue that, since Rocky's alert is the same no matter the type of search he performs, Rocky cannot be deemed reliable to detect narcotics, since he also may be detecting human odor. While Burney raises a legitimate concern and, given the opinions proffered by each party, one that is reasonably debatable, the court finds persuasive Lt. Salisbury's testimony that dogs may be successfully trained not only for more than one purpose, but also to

---

[2] In his supplemental brief, Burney argues that the test sheets also reflect a "timing" issue between submission of the test sheet and submission of the certificate, and asks the court to question the legitimacy of the IPWDA as a bona fide certifying agency. Burney did not raise this issue at the hearing, at which time he may have questioned Salisbury, and the court will not speculate regarding the timing of submissions without additional information (e.g., whether the "set" times of the tests were actual times, or whether the 10:01 test and 10:02 certification involved the open area search test).

[3] Salisbury explained that he has never certified a dog he himself has trained.

6

know which purpose the dog is to complete based on his handler's command. Regarding Rocky, specifically, Deputy Akers attests that

> I have been a certified K9 handler since 2020. I have worked exclusively with K9 Rocky during my K9 handling career. …
>
> As it pertains to narcotic detection and article detection, I use two different commands with K9 Rocky when initiating a search for narcotics as compared to initiating an article search. K9 Rocky behaves differently and executes his search differently depending on the command I give him.
>
> K9 Rocky has been certified on narcotic detection and article detection several times. These certifications have been conducted on the same day. Based on these certifications and my observations of K9 Rocky, he has never had any issue differentiating a narcotics search from an articles search.

DE 76-1. At the hearing, Akers testified that he uses the command, "zook!," which he believes is the Dutch word for "search," when he directs Rocky to conduct an open-air sniff of a vehicle. The court finds this evidence sufficient to support a finding that law enforcement reasonably relied on Rocky's alert at the passenger door of Burney's vehicle and had probable cause to search inside.

## V. Conclusion

The court has considered all theories and evidence presented, including that contained in the parties' supplemental briefing, and concludes that Burney fails to demonstrate that suppression of evidence seized during the March 8, 2023 search of his vehicle is warranted. While we may not know exactly how a dog's brain and sense of smell work to detect different odors under different circumstances based on different commands, the standard for suppression is a lack of probable cause, not a lack of perfect knowledge. In this case, the evidence demonstrates that Rocky, a dual-purpose K9, was satisfactorily trained and certified in narcotics detection at the time of the March 8, 2023 search, and could differentiate a search for narcotics from a search for human odor on articles.

7

Considering the totality of the circumstances, the court finds law enforcement reasonably relied on Rocky's alert to search Burney's vehicle. Therefore, Defendant's motion to suppress [DE 63] is DENIED.

SO ORDERED this 26th day of February, 2025.

*Richard E. Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE