IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CR-00039-M

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCUS TERRELL BURNEY,

    Defendant.

ORDER

    These matters come before the court on Defendant's pro se pretrial motions filed September 30, 2025 [DE 106, 107, 108, 109, 110, 111, 112, 113, 116]. The United States filed a response in opposition to the motions on October 14, 2025. For the reasons that follow, the court will hear Defendant's motion to suppress statements made during arrest, but all remaining motions are denied.

### I. Defendant's Motions are Untimely

    First, Defendant has filed a total of nine motions prior to trial, The motions, eight of which are filed pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure and one of which is filed after a court-ordered deadline, are untimely. In this case, pretrial motions were originally due to be filed no later than September 25, 2023 (DE 18), and Defendant filed his first motion to suppress (Rule 12(b)(3)(C)) and a motion to dismiss for a violation of his Sixth Amendment right to a speedy trial (Rule 12(b)(3)(A)) on that date. *See* DE 21, 23. Later, on October 11, 2024, this court granted Defendant leave to file a second motion to suppress evidence out of time. DE 63, 65. Here, however, Defendant has neither requested leave to file the present motions nor

demonstrated good cause for his untimely filing of eight pretrial motions more than two years after the deadline and one several months after a court-ordered deadline. *See United States v. Pittman*, 125 F.4th 527, 531 (4th Cir. 2025) (defendant must demonstrate good cause to excuse untimely filing of pretrial motions); *see also* Fed. R. Crim. P. 12(c)(3). Although he proceeds pro se, Defendant must abide by all court orders and applicable federal and local court rules, including deadlines applicable to all litigants. *See Everette v. Dillard*, No. 5:21-CT-3023-BO, 2021 WL 2839963, at *1 (E.D.N.C. June 14, 2021), *aff'd*, No. 21-7010, 2021 WL 5585750 (4th Cir. Nov. 30, 2021) (citing *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989)).

Even if it were to determine the present motions timely filed, the court finds eight of the nine motions to be without merit and that a hearing is necessary on the remaining motion.

## II. Motion to Suppress Statements Made at Arrest

In his first pretrial motion, Defendant seeks an order suppressing statements he made during his arrest, particularly a statement that the firearm located in his vehicle was "registered" [DE 106]. Defendant contends that the bodycam video of his traffic stop reflects that the arresting officer, Officer Fernandez, never read his *Miranda* rights before Defendant told Fernandez that the firearm was "registered." The United States responds that the recorded conversation, in fact, demonstrates that Fernandez read Defendant his *Miranda* rights before the conversation, which occurred after Defendant was arrested, handcuffed, and placed in the patrol car.

Neither party has produced the video nor supplied an affidavit supporting their arguments. The video viewed by the court during Defendant's first suppression hearing on November 2, 2023, did not include the referenced footage. In this context, "[s]tatements obtained from a defendant during custodial interrogation must be suppressed unless the government can prove, by a preponderance of evidence, that law enforcement officers adequately informed the defendant of

2

his *Miranda* rights and obtained a knowing and voluntary waiver of those rights." *United States v. Brooks*, No. CR ELH-20-034, 2024 WL 1140692, at *17 (D. Md. Mar. 14, 2024) (citing *Miranda v. Arizona*, 384 U.S. 436, 476-79 (1966)). The government bears the burden of establishing, by a preponderance of the evidence, that defendant was advised of his rights and that his statements were made voluntarily. *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). The court will hear this matter at the pretrial conference on October 23, 2025.

### III. Defendant's Remaining Motions Lack Merit

Of the eight remaining motions, two seek suppression of the evidence, five seek dismissal of the indictment on various bases, and one seeks reconsideration of the court's May 15, 2025 order granting the United States' motion in limine.

#### A. Suppression Motions

Defendant's second pretrial motion seeks an order suppressing evidence seized from a search of his vehicle based on the "unreliability" of the K9 passive air sniff and the K9's trespass against Defendant's vehicle [DE 107]. First, the court has already denied the Defendant's second (properly filed) suppression motion, in which he argued that no evidence existed demonstrating the K9 officer, Rocky, can differentiate between contraband (narcotics) and non-contraband (person's odor on keys or other materials). In its February 26, 2025 order, the court found that Lt. Salisbury, Rocky's IPWDA trainer, and Deputy Akers, Rocky's handler, truthfully testified that dogs can be trained to differentiate searches for contraband and non-contraband based on the command given, and that Rocky could differentiate based on the command Akers used to prompt Rocky to conduct a passive air sniff. DE 78.

Second, Defendant contends that during the passive air sniff, Rocky jumped up, put his paws on the back passenger door, and sniffed at the open window, which constitutes an unlawful

3

trespass under *United States v. Jones*, 565 U.S. 400, 405 (2012). *See United States v. Corbett*, 718 F. Supp. 3d 537, 565 (S.D.W. Va. 2024) (finding an unlawful search where K9 "trespassed onto defendant's property with the officer's intent to obtain information by his 'upping' onto defendant's car, as he had been trained to do, and simultaneously penetrating through the open windows"). This court has reviewed the dashcam video, both before and at the suppression hearing in Nov 2023 and, again, in reviewing the present motion, and observed that Rocky, led by Akers, sniffed around the exterior of the vehicle starting at the front, circled around the driver's side and back of the car, then as he approached the rear passenger door, Rocky sniffed at the bottom of the door, raised up, inclined his head at the window, and momentarily touched the door with his paw, then immediately sat down. Video 6:26-6:50, DE 22. The period from Rocky's arrival at the back passenger door to the time he sat down lasted three seconds. *Id.* at 6:46-6:49.

The court finds Rocky's behavior distinguishable from that found to be an unlawful trespass in *Corbett*, as Rocky was not prompted by Akers to raise up toward the window and touch the car; in fact, the court finds this to be "alert" behavior after Rocky initially responded when he stopped to sniff at the bottom of the rear passenger door. *See United States v. Moore*, No. CR 3:24-615-MGL-1, 2025 WL 2778345, at *4 (D.S.C. Sept. 29, 2025) (finding no trespass where K9 momentarily poked his snout in the front driver window, without prompting by the officer, while sniffing the door seam). Defendant's motion is denied.

Defendant's ninth pretrial motion seeks an order reopening the February 2025 suppression hearing [DE 116]. Defendant contends that he was improperly denied the opportunity to "confront" and cross examine Deputy Akers regarding Akers' affidavit filed after the hearing, on which the court partially relied in its order. Specifically, Akers attested that he utilized different commands to prompt K9 Rocky to search for either contraband or non-contraband. The court finds

4

that Defendant's Sixth Amendment right to "confront" government witnesses was not violated here; at the hearing, IPWDA trainer Lt. Salisbury testified that "dogs may be successfully trained not only for more than one purpose, but also to know which purpose the dog is to complete based on his handler's command." Order at 6-7, DE 78. After Salisbury's testimony, Akers, Rocky's handler, testified regarding deploying Rocky for passive air sniffs, including giving the particular command, "zook!" when searching a vehicle. *See id.* Thus, Defendant had the ability to—and did—cross examine Akers at the hearing about his procedure for deploying Rocky for a passive air sniff. Tr. 18: 18 – 19: 15, DE 87. The fact that Defendant failed or chose not to ask Akers at the hearing whether Rocky could distinguish which purpose Akers intended, based on commands he gave Rocky (as explained by Salisbury), does not demonstrate a confrontation violation. Moreover, Defendant fails to identify how any cross examination of Akers on this issue would have "changed the disposition of the motion's outcome." Mot. at 2. Defendant's motion is denied.

### B. Motion to Reconsider Order and Deny Motion in Limine

On May 15, 2025, this court granted the United States' motion in limine requesting that Defendant be "prohibited from arguing or implying that Defendant's traffic stop, K9 alert on his car, and ensuing search of his car were unconstitutional or otherwise improper." *See* DE 86, 95. In his third pretrial motion, Defendant asks the court to reconsider its order and deny the motion in limine, contending that he was not represented when the court denied the order. On its face, this is inaccurate, as Defendant was represented when a response to the motion in limine was due to be filed on or before May 8, 2025 (*see* DE 80). However, in his pro se motion for new counsel filed May 12, 2025, Defendant asserts that he instructed his counsel, Merritt Wagoner, to oppose the motion in limine and that Wagoner said he "would do that at the pretrial conference." DE 92. The motion in limine was not discussed at the pretrial conference. Although Defendant's motion

5

Case 7:23-cr-00039-M-KS     Document 121     Filed 10/17/25     Page 5 of 16

is untimely (based on the May 8, 2025 deadline), taking Defendant's alleged instruction to Wagoner and Wagoner's response as true, the court finds a sufficient basis on which to reopen the issue and consider Defendant's position on the United States' motion in limine.

Defendant contends that "the traffic stop issues are a part of the case" and that he must "be able to show the motive of officers, to obtain access to the inside of the vehicle, to allegedly find a firearm with Officer Bailey's DNA on the weapon, and show Officer Fernandez tampering with the evidence afterwards, to make it look like my DNA was on the weapon." DE 108. The United States responds that "it is not the role of the jury to determine any traffic stop issues." DE 117. The court agrees with the government, to the extent that Defendant seeks to present to the jury any issues raised in his motions to suppress, which have been (or will be) thoroughly addressed and disposed of by this court. However, Defendant is not prohibited from introducing evidence regarding alleged evidence tampering; he simply may not do so by arguing that the traffic stop was delayed or that the K9 passive sniff alert was unreliable based on Rocky's training or behavior, or on the procedure deployed at the traffic stop. These are all evidentiary rulings properly presented to and resolved by the court, not the jury. As neither the government's motion in limine nor this court's order granting it contemplate issues concerning "tampering," Defendant's motion to reconsider and deny the motion in limine is denied.

### C. Motions to Dismiss Indictment

In his fourth pretrial motion, Defendant seeks dismissal of the indictment based on an alleged *Brady* violation by the United States [DE 109]. Defendant claims that the government failed to provide him with copies of two January 25, 2022 "conflicting" IPWDA test sheets, one showing K9 Rocky certified to detect cocaine, heroin, methamphetamine, and marijuana, and a subsequent sheet showing Rocky certified to detect cocaine, heroin, and methamphetamine. As

6

set forth in its order denying the suppression motion, the court heard testimony by Lt. Salisbury, who created these sheets and electronically submitted them to IPWDA, explaining that he erred on the first sheet by stating that Rocky was certified in marijuana detection (i.e., he confused Rocky with another dog tested that day) and corrected the error by submitting the subsequent sheet, which omitted "marijuana." DE 78 at 5-6. The court found the testimony credible and that the error did "not invalidate Rocky's training and certifications in the detection of cocaine, heroin, and methamphetamines, but not marijuana." *Id.* During this testimony, the government provided copies of the test sheets to the Defendant and to the court, and the Defendant had the opportunity to question Salisbury regarding the sheets. Even if copies of the sheets were not provided, however, Defendant does not explain how this evidence is exculpatory and, thus, might constitute a *Brady* violation. Defendant's motion is denied.

In his fifth pretrial motion, Defendant seeks dismissal of the Indictment based on alleged "false" testimony by Deputy Akers before the grand jury [DE 110]. Defendant contends that Akers testified falsely twice; first, by stating that the arresting officer, Officer Fernandez, ran a record check on Defendant before the traffic stop and, second, by his affirmative answer to the jury's question whether any drugs were found at the traffic stop. According to Defendant, Akers falsely claimed that a "digital scale with marijuana and a white powdered substance" were located in Defendant's vehicle. Defendant claims this is directly contrary to Akers' testimony at a subsequent preliminary hearing, at which Akers testified that no drugs were found in the vehicle.

A court may exercise its supervisory power to dismiss an indictment because of misconduct before the grand jury if the misconduct "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." *United States v. Outlaw*, 464 F. App'x 165, 167 (4th Cir.

7

2012) (quoting *United States v. Williams*, 504 U.S. 36, 46 (1992) (citing Rule 6 of the Federal Rules of Criminal Procedure)). If a defendant establishes such a violation, dismissal of an indictment is only warranted if the violation resulted in prejudice to the defendant. *Id.* (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). Such prejudice may be shown "only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* However, "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment." *Id.* (quoting *Bank of Nova Scotia*, 487 U.S. at 261); *see also Costello v. United States*, 350 U.S. 359, 363–64 (1956) (holding that "[i]t would run counter to the whole history of the grand jury institution" to permit an indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury.").

Here, Defendant fails to demonstrate the prejudice necessary to establish a violation supporting dismissal of the Indictment. Defendant was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Assuming they were "false," neither of Akers' statements indicate they would have "substantially influenced the grand jury's decision to indict" Defendant on a firearm charge. First, the arresting officer, Fernandez, has testified before this court that he initiated the traffic stop due to a "tinted license cover" violation. Tr. 20: 3-6, DE 34. Defendant does not explain how *Akers'* purportedly inconsistent statement about the initiation of the traffic stop caused Defendant prejudice; in fact, assuming the statements were made before the grand jury as Defendant describes (Defendant did not provide the court with a copy of the grand jury transcript), it is not unreasonable to assume that the grand jury heard and considered the inconsistent statements in determining whether probable cause existed.

8

Second, Akers' affirmative answer to a question about whether drugs were found in the car is materially consistent with Akers' testimony before this court that "a digital scale with white powder residue" was found in the area of the car where the K9 alerted and that a field test ("swipe") of the residue "indicate[d] the presence of cocaine." Tr. 22: 3-12, DE 87. That such testimony may be inconsistent with Akers' testimony during a preliminary hearing does not support a finding of a *Williams*' violation, particularly where the offense charged was not drug related. Defendant's motion to dismiss is denied. Notably, this order does not prohibit Defendant from attempting to challenge Akers' credibility, if appropriate, by any inconsistent statements made under oath.

In his seventh pretrial motion, Defendant seeks dismissal arguing that the Indictment omits two essential elements of the crime charged [DE 112]. Defendant contends that the grand jury "heard no allegations" that he was "convicted of a crime punishable for a term of imprisonment exceeding one year or the fact that [he] had knowledge of that status." DE 112. Again, Defendant did not provide the court with a copy of the grand jury transcript, on which he apparently relies. Nevertheless, the Indictment in this case, signed by the grand jury's foreperson, alleges "the defendant herein, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, knowingly possessed a firearm, and the firearm was in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(l) and 924." DE 1. This appears to be directly contrary to Defendant's position. Having no additional information supporting Defendant's motion, the motion is denied.

In his sixth and eighth pretrial motions, Defendant seeks dismissal based on alleged violations of his right to a speedy trial under the Sixth Amendment [DE 111] and of the Speedy Trial Act itself [DE 113]. In the motion at DE 111, Defendant seeks dismissal pursuant to both the Sixth Amendment and Rule 48(b)(3) of the Federal Rules of Criminal Procedure. He did the

9

same in his motion timely filed on September 25, 2023. *See* DE 23. In that first motion, Defendant claimed that a six-month "delay" between his arrest in March 2023 and September 2023 (no specific date identified) violated his Sixth Amendment right. *Id.* Based on an examination of the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the court found no constitutional or rule violation and denied the motion. DE 29.

Here, Defendant again challenges the delay prior to his initial appearance on August 30, 2023, but provides no new argument nor evidence; thus, for the reasons stated in its October 24, 2023 order, the court denies the motion in this respect. Defendant also contends that the delays since the court's October 2023 order have not been "weighed against the ends of justice" and, thus, the Defendant has suffered undue prejudice. The court disagrees.

At the time of the court's October 2023 order, Defendant's motion to suppress (also filed September 25, 2023) remained pending and was heard by the court on November 2, 2023. *See* DE 21. At the close of the hearing, the court noted that the Speedy Trial Act deadline would be tolled until it issued a written order on the suppression motion, and that it anticipated setting the trial for early December 2023. Tr. 85: 1-18, DE 34. On November 6, 2023, the United States filed a "Request for Trial Scheduling," in which counsel informed the court of previously scheduled travel plans and that defense counsel did not object to a request to set the trial during the week of December 11, 2023. DE 31. On November 7, 2023, the court issued its order on the suppression motion, and on November 15, 2023, issued a notice setting the arraignment/trial on December 12, 2023. DE 32. On December 4, 2023, Defendant moved to continue the arraignment/trial until the January 2024 term of court (DE 35), and the court granted the motion finding that the "ends of justice served by granting the motion outweigh the best interests of the public and Defendant in a

10

Case 7:23-cr-00039-M-KS     Document 121     Filed 10/17/25     Page 10 of 16

speedy trial. Any delay occasioned by granting the motion shall therefore be excluded in computing Defendant's speedy-trial time. *See* 18 U.S.C. § 3161(h)(7)."

On January 16, 2024, Defendant's attorney, Edward Gray, moved to withdraw, advising the court of an "irretrievable breakdown in the professional relationship" and that "Burney requests that undersigned counsel withdraw and that replacement counsel be appointed." DE 36. The court granted the motion and continued the arraignment/trial to the February 27, 2024 term of court "to allow new counsel to review the case and prepare for the hearings." DE 37. The court conducted an "ends of justice" determination and excluded the time under § 3161(h)(7). *Id.* On February 27, 2024, Defendant's second attorney, Geoffrey Hosford, filed a motion to continue citing his own surgery and that he "needs additional time to meet with Defendant and to discuss his case with him." DE 41. The court granted the motion and continued the arraignment/trial to the March 26, 2024 term of court. DE 42. The court conducted an "ends of justice" determination and excluded the time under § 3161(h)(7). *Id.* On March 5, 2024, Defendant filed a pro se motion seeking to "waive arraignment" and "proceed pro se." DE 43. Because Defendant was represented, the court denied the motion without prejudice, but addressed Defendant's complaints of "delay to trial" and found no undue delay. DE 45. On March 17, 2024, Hosford filed another motion to continue the arraignment/trial, citing his previously scheduled travel plans in late March 2024. DE 44. The court granted the motion and continued the arraignment to April 3, 2024 term of court. DE 46. The court conducted an "ends of justice" determination and excluded the time under § 3161(h)(7). *Id.*

At his arraignment on April 3, 2024, the court asked Defendant whether he was ready to proceed based on conversations with his lawyer and, after a brief recess to confer with Hosford, Defendant expressed his intent to proceed and his "full satisfaction" with Hosford's legal services

11

in his case. Defendant pled not guilty to the felon in possession charge, and the court asked counsel whether they had conferred regarding trial dates. AUSA Tyler Lemons advised that counsel had discussed dates in August 2024; Defendant responded, "no," but Hosford explained that each counsel had previously scheduled matters that "block[ed] out significant periods of time." The court then requested that counsel confer and provide the court with suggested trial dates, conducted an "ends of justice" analysis, and excluded the time to trial under § 3161(h)(7). After hearing from counsel, the court issued an order setting the trial on August 6, 2024, and again conducted an "ends of justice" analysis and excluded the time to trial under § 3161(h)(7). DE 51.

On May 17, 2024, Defendant filed a pro se motion seeking the appointment of new counsel. DE 53. After the time for a response to the motion expired, the court set a hearing on the motion for June 20, 2024. That day, Hosford filed an emergency motion to continue the hearing, citing a medical condition. DE 54. The court found good cause to grant the Defendant's motion for new counsel and vacated the hearing, rendering Hosford's motion moot. DE 55. On June 25, 2024, Merritt Wagoner entered his appearance on behalf of Defendant. DE 56.

On July 3, 2024, Wagoner filed a motion to continue the trial, arguing that he was "still acquiring discovery and needs additional time to review the material and confer with the Defendant" and requesting that the trial be continued to the court's November 2024 term. DE 58. That day, the court issued an order granting the motion, rescheduling the pretrial conference and the trial to November 5, 2024; the court conducted an "ends of justice" analysis and excluded the time to trial under § 3161(h)(7). DE 59. However, on October 10, 2024, Defendant filed a motion for leave to file a second motion to suppress evidence seized during his traffic stop, the actual motion to suppress, and a motion to continue the trial. DE 62, 63, 64. The court granted the motions for leave and to continue trial, and set a hearing on the motion to suppress for November

12

5, 2024. DE 65. Although the filing of the motion to suppress tolled the Speedy Trial Act deadline, the court also conducted an "ends of justice" analysis and excluded the time to trial under § 3161(h)(7). *Id.* At the hearing, Defendant moved orally for a continuance; the court granted the motion over the United States' objection, and directed counsel to confer regarding suggested hearing dates. At counsel's request, the court continued the hearing to February 3, 2025. The court heard the motion that day and, after presentation of the evidence and arguments by counsel, permitted counsel two weeks in which to file supplemental briefs regarding the issues raised.

On February 26, 2025, the court issued a written order denying the motion to suppress. DE 78. The same day, the court issued a text order directing counsel to confer and provide the court with suggested trial dates. Counsel did so on March 3, 2025, and on March 4, 2025, the court issued an order scheduling the trial on May 20, 2025. DE 80. In so doing, the court conducted an "ends of justice" analysis and excluded the time to trial under § 3161(h)(7). *Id.*

On May 12, Defendant filed a pro se motion to proceed pro se (DE 92) and Wagoner filed a motion to withdraw (DE 93). The court heard these motions on May 15, 2025, granted the motions, and, at Defendant's express request, appointed a fourth attorney to represent Defendant. DE 95. The court also continued the trial to "permit new defense counsel to confer with Defendant and adequately prepare his defense," conducted an "ends of justice" analysis and excluded the time to trial under § 3161(h)(7). *Id.* On May 17, 2025, Damon Chetson entered his appearance on behalf of Defendant. DE 96.

At counsel's request, on May 20, 2025, the court issued an order rescheduling the trial to October 29, 2025, the current trial date. DE 98. However, on August 18, 2025, and September 9, 2025, Defendant filed two additional motions seeking leave to proceed pro se. DE 100, 101. The court set the motions for hearing on September 22, 2025. At the hearing, the Defendant denied

13

that he wished to change his plea, as previously represented to the court, confirmed that he wished to proceed to trial on his not guilty plea, and requested leave to proceed pro se. DE 103. The court granted his motion and appointed Chetson and co-counsel, Joshua Xerri as stand-by counsel. *Id.* On September 30, 2025, Defendant filed the present motions, including suppression motions, thereby tolling again the Speedy Trial Act time.

Based on this procedural history and an evaluation of the *Barker* factors,[1] the court finds no violation of Rule 48(b)(3) nor of Defendant's Sixth Amendment right to a speedy trial. While more than two years has passed since Defendant's expression of his right to a speedy trial on August 30, 2023, the docket reflects that this delay was caused primarily by Defendant himself in seeking new counsel, who needed to familiarize themselves with the case, review discovery, and confer with Defendant, and in filing motions to suppress, which required evidentiary hearings. At all applicable junctures, the court reviewed the record and concluded that the ends of justice served by the time necessary to prepare for trial outweighed the best interests of the public and Defendant in a speedy trial. The record reflects no prejudice to the Defendant as a result of the delay thus far. Defendant's motion seeking dismissal based on a Rule 48 and/or Sixth Amendment speedy trial violation [DE 111] is denied.

Similarly, the court finds no violation of the Speedy Trial Act itself, as argued in Defendant's motion at DE 113.

First, Defendant alleges a violation of § 3161(b), arguing that he was indicted in this case on April 25, 2023, more than thirty days after he was arrested on March 17, 2023, on the underlying charge. However, as stated in this court's October 24, 2023 order, the record reflects that

---

[1] *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (factors to consider include, (1) the length of delay; (2) the reasons for the delay; (3) the timeliness and vigor of the defendant's assertion of the speedy trial right; and (4) the degree of prejudice which the defendant suffers).

14

Defendant was arrested on March 17, 2023, on a warrant issued pursuant to a petition for revocation of his supervised release imposed in Case No. 7:12-cr-68, which was filed on March 16, 2023, in the Western District of North Carolina ("WDNC") where his supervision had been transferred. *See* WDNC Case Docket, 3:20-cr-302-MOC, DE 148-1. Under these circumstances, the court finds no violation.

Defendant also contends that "there is no way" that the seventy-day rule in § 3161(c)(1) has not been violated after he expressed his right to a speedy trial on August 30, 2023, and that, in violation of § 3161(h)(8)(A)—which the court reasonably construes as a typographical error for the applicable statute, § 3161(h)(*7*)(A)—"there are no express ends of justice findings on record to justify a delay from April 2023 to a trial date on October 28, 2025." DE 113. Based on the record in this case, and as demonstrated by the procedural history described above, Defendant's § 3161(h)(7)(A) lacks merit, and the court has properly calculated the seventy days required under § 3161(c)(1) to expire on December 27, 2025, in this case. The court finds no violation of the Speedy Trial Act, and Defendant's motion to dismiss [DE 113] is denied.

## IV. Conclusion

Defendant has filed, out of time, eight pretrial motions under Rule 12(b)(3) and has failed to seek leave to do so or to demonstrate good cause for the delay. Defendant's motion to "deny the government's motion in limine" was due to be filed on or before May 8, 2025. The court may deny the motions solely on these bases. However, even if the motions were timely filed, the court finds that eight of the motions [DE 107, 108, 109, 110, 111, 112, 113, 116] lack merit and therefore DENIES the motions.

Because it could not fully evaluate the merits of Defendant's motion to suppress statements made at his arrest on the briefs [DE 106], the court will hear Defendant's motion at the pretrial

15

conference on October 23, 2025. The court RESERVES RULING on this motion. Defendant is reminded that, because this motion remains pending, the seventy-day period required by the Speedy Trial Act is tolled until its resolution. *See* 28 U.S.C. § 3161(h)(1)(D).

SO ORDERED this 17th day of October, 2025.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE